UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **GERALD FERRO** | **10-14062** |
| **LORI FERRO** | SECTION A |
| DEBTORS | CHAPTER 13 |

## REASONS FOR DECISION

Hearings on the following matters came before the Court on December 4, 2014:

1) Thumann, Inc.'s ("Thumann") Motion for Relief from Automatic Stay to Collect on a Judgment Entered against Gerald Ferro and Providing for Allowance and Payment of an Administrative Expense Claim[1] filed by Thumann, Inc.; and

2) This Court's Order for a representative of the law firm of McCarter & English, L.L.P., counsel for Thumann, Inc., to appear and show cause why sanctions should not be opposed for willful and malicious violation of the automatic stay.[2]

At the conclusion of the hearing, the Court took the matter under advisement.

**I. Findings of Fact**

Thumann manufactures delicatessen and meat products. On March 28, 2005, Gerald "Jerry" Ferro ("Ferro") signed a Distributorship Agreement with Thumann.[3] Through the Distributorship Agreement, Ferro was granted a right to distribute Thumann products. Even though Ferro signed the Distributorship Agreement individually, he also signed a personal guarantee of the Distributorship Agreement.[4] Ferro's Distributorship Agreement is non-exclusive.

---

[1] P-42.

[2] P-56.

[3] Exh. 1.

[4] Exh. 12.

On April 4, 2005, Ferro registered Sterling Fine Foods, L.L.C. with the Louisiana Secretary of State.[5] Sterling is a meat distributor, and Ferro works for Sterling.

Ferro and his wife, Lori Ferro, (collectively "Debtors") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on October 31, 2010 ("the Petition Date"). Neither Ferro nor Sterling owed any amounts to Thumann on the Petition Date.

Although Sterling did not have a distribution agreement with Thumann, it ordered and received goods from Thumann for ten (10) years. As an employee of Sterling, Ferro did all of the ordering for Sterling by facsimile transmission. Thumann sent an emails acknowledging orders to Sterling at the email address, Sterlingfinefoods@cox.net.[6] Sterling received invoices for delivered goods in the pallets of products delivered and by email. Sterling paid Thumann from its checking account.

At the hearing, Thumann introduced statements evidencing the debt incurred by Sterling. The statements spanned from August 24, 2012, through December 7, 2012, and were addressed to:

> Sterling Fine Foods
> Gerald Ferro, Jr.
> 4412 Henican Pl.
> Metairie, LA 70003.[7]

Ferro never received these statements.

---

[5] Exh. 11. The date Sterling was organized is unknown.

[6] Exh. 13.

[7] Exh. 2.

On April 16, 2013, Thumann filed suit against Sterling and Ferro in the Superior Court of New Jersey for nonpayment on the Distributorship Agreement and the personal guarantee.[9] Ferro filed an Answer and Counterclaim[10] alleging that he was induced by two (2) executives of Thumann to accept delivery of orders placed by Jamie Clarkson of C&C Distributors and that neither he nor Sterling would be responsible for paying for Ms. Clarkson's orders.

On April 14, 2014, counsel for Ferro sent a letter to the Superior Court judge advising him of Ferro's pending bankruptcy case. A carbon copy of the letter was sent to Gregory Hindy of McCarter & English, L.L.P., counsel for Thumann.[11] Thumann sent a reply letter to the Superior Court judge evidencing its knowledge of the bankruptcy filing.[12]

On April 25, 2014, the Superior Court of New Jersey granted summary judgment in favor of Thumann and against Sterling in the principal amount of $87,035.31, plus prejudgment interest from July 27, 2012, costs, and post-judgment interest.[13] The Order granting Summary Judgment notes, "This matter is stayed as to Defendant Ferro."

Thumann moved for reconsideration arguing that the automatic stay was not applicable to collection of debts incurred post-petition.[14] Then, on May 27, 2014, the Superior Court of New Jersey issued an Order granting summary judgment in favor of Thumann and against Ferro in the

---

[9] Exh. 3.

[10] Exh. 4.

[11] Exh. 9.

[12] Exh. 8.

[13] Exh. 5.

[14] Exh. 6.

principal amount of $87,035.31, plus prejudgment interest from July 27, 2012, costs, and post-judgment interest ("the Judgment").[15]

On August 15, 2014, Thumann filed a Motion for Relief from the Automatic Stay to collect on the Judgment.[16]

This Court issued an Order for a representative of the law firm of McCarter & English, L.L.P., Thumann's attorneys, to appear and show cause why sanctions should not be opposed for willful and malicious violation of the automatic stay.[17]

## II. Law and Analysis

In a case under chapter 13, property of the estate includes all interests of the debtor in property as of the petition date as well as property acquired by or earned by the debtor postpetition.[18] The filing of a bankruptcy petition automatically stays "any act to obtain possession of property of the estate or of property of the estate or of property from the estate or to exercise control over property of the estate."[19] "[T]he stay of an act against property of the estate ... continues until such property is no longer property of the estate."[20]

---

[15] Exh. 7.

[16] P-42.

[17] P-56.

[18] 11 U.S.C. §§ 541 and 1306.

[19] 11 U.S.C. § 362(a)(3).

[20] 11 U.S.C. § 362(c)(1).

In a case under chapter 13, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."[21] Debtors' confirmed[22] Plan of Reorganization ("Plan") provides that property of the estate vests in Debtors:

> [U]pon Debtor receiving a discharge under 11 U.S.C. § 1328 or Debtor's Case being dismissed. The automatic stay shall remain in effect as to all property of the Debtor and Debtor's estate pursuant to 11 U.S.C. § 362(c), except as further ordered by the Court.[23]

In order for a chapter 13 debtor to be eligible for discharge under section 1328, the debtor must complete all payments under his confirmed plan.[24] Debtors have not completed all payments under their Plan, and thus, they have not yet received a discharge. Therefore, property of the estate has not vested in Debtors, and the automatic stay remains in effect as to all property of their estate until the earliest of:

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) ... the time a discharge is granted or denied.[25]

The Bankruptcy Code allows an individual injured by a willful violation of the automatic stay to "recover actual damages, including costs and attorneys' fees, and, in appropriate

---

[21] 11 U.S.C. § 1327(b).

[22] This Court confirmed Debtors' Plan on January 21, 2011. P-16.

[23] Plan, ¶ R. P-6.

[24] *See* 11 U.S.C. § 1328(a).

[25] 11 U.S.C. § 362(c)(2)

5

circumstances, [a debtor] may recover punitive damages."[26] A willful violation of the automatic stay:

> [D]oes not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.[27]

Therefore, in order to find that Thumann willfully violated the automatic stay, Thumann must have (1) known of the existence of the stay; (2) acted intentionally; and (3) violated the stay.[28]

Thumann admits that it was aware of the existence of the stay prior to the Judgment. Thumann petitioned the Superior Court for reconsideration of its refusal to rule against Ferro individually on the basis that the debt was a postpetition obligation and, therefore, not subject to the stay.

Technically, Thumann may be correct in its position.[29] Both Ferro and Thumann agree that Ferro did not owe Thumann a debt at the time this case was filed. What concerns this Court, however, is the concern that Ferro did not owe Thumann a debt *postpetition* and that Thumann's claims against Ferro were reduced to judgment by artifice and sharp practice.

At the hearing on this matter, Ferro testified that he had signed a Distributor Agreement in his own name. He also guaranteed that agreement. Shortly thereafter, Ferro incorporated a company

---

[26] 11 U.S.C. § 362(k).

[27] *Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298, 302 (5th Cir. 2005) (quoting *In re Taylor*, 884 F.2d 478, 482 (9th Cir. 1989)).

[28] *Id.*

[29] Thumann taking the Judgment was not an attempt to collect a debt.

6

named Sterling Fine Foods, L.L.C. and began doing business. That company ordered and paid for food from Thumann for ten (10) years before Ferro filed this case or Sterling went into default.

The record reflects that Sterling ordered goods from Thumann using its facsimile number and an email address in its name. Thumann acknowledged Sterling's orders by return email and invoice. Nothing in these transmissions includes Ferro. Thumann produced nothing to establish that Ferro guaranteed the Sterling debt. Instead, Thumann offered statements of account showing Sterling Fine Foods and Ferro as the account holder. However, these statements were not delivered to Ferro nor are they consistent with the documents Thumann delivered to Sterling over the years.

At the hearing on the matter, Ferro produced and identified invoices issued by Thumann and sent to Sterling on the alleged outstanding obligations. The statements are completely devoid of any reference to Ferro. Further, Ferro testified that he did not receive the statements offered by Sterling, and Sterling offered no proof that the credit was issued in Sterling *and* Ferro's names. It is this Court's suspicion that the documents reflecting Ferro's name were internally produced after the fact by Thumann in an effort to tie Ferro to this account. Certainly nothing this Court has seen would warrant that result from either a factual or legal perspective. Unfortunately, this Court does not have jurisdiction over the enforcement of an alleged postpetition obligation of the debtor, even if this Court has serious concerns regarding its existence.

It is for this reason, however, that this Court recommends that counsel for Ferro request a new trial on the judgment rendered in state court based on the information produced at the hearing on this matter. If appropriate, sanctions may be awarded by that Court should the evidence support that no debt is owed by Ferro and that the documents produced by Thumann were generated after Sterling defaulted in an effort to implicate Ferro.

Because this Court has found that the debt allegedly owed by Ferro to Thumann can only be a postpetition obligation, no stay violation occurred through Thumann's efforts to liquidate the claim and sanctions are not appropriate.

Thumann also seeks relief from the stay to collect on the Judgment. Courts are "cautioned to use [their] discretion [to annul the stay] sparingly because of the adverse impact that validation could have on other creditors who honored the stay."[30] Courts have retroactively lifted the stay when doing so would "benefit the resolution of the bankruptcy."[31] In this case, however, retroactively lifting the stay to allow Thumann to collect the Judgment would hinder the resolution of the bankruptcy and negatively impact other creditors. Through the Plan, all of Debtors' disposable income is paid to creditors. If the Thumann was allowed to collect the Judgment, Debtors would likely default on Plan payments, which would in turn result in the eventual dismissal of their bankruptcy case. Therefore, Thumann's Motion for Relief from the Automatic Stay is denied.

**III. Conclusion**

For the reasons assigned, the Motion for Relief from the Automatic Stay[32] filed by Thumann is denied. The Court's Order for a representative of the law firm of McCarter & English, L.L.P. to appear and show cause why sanctions should not be opposed for willful and malicious violation of

---

[30] *In re Jackson*, 392 B.R. 666, 671 (Bankr.S.D.Miss. 2008) (quoting *City Bank v. Industrial Bank NA (In re Brown)*, 2006 WL 1210789, *1 (5th Cir. 2006)).

[31] *(Barnes v. Barnes) In re Barnes*, 279 Fed.Appx. 318, 320 (5th Cir. 2008).

[32] P-42.

the automatic stay[33] is also satisfied. The Court will enter a separate Order in accord with these Reasons.

New Orleans, Louisiana, February 3, 2015.

*signature*

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[33] P-56.